IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN PATTERSON, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 22-4177 |
| WAL-MART STORES, INC. *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

**SCHMEHL, J. /s/ JLS**                                                                            **January 25, 2024**

Plaintiff Brian Patterson initiated this lawsuit after allegedly slipping on produce left on the floor of a Lancaster-area Walmart. Mr. Patterson's original Complaint (ECF No. 1) brought one claim for negligence, but the Court later granted him leave (ECF No. 35) to file an Amended Complaint (ECF No. 36) requesting punitive damages. Defendants Wal-Mart Stores, Inc., Wal-Mart Stores East, L.P., and Wal-Mart Stores East, Inc. (collectively, "Walmart") have now moved for partial summary judgment as to Mr. Patterson's request for punitive damages. (*See* Mot. for Partial Summ. J. ¶ 32, ECF No. 39.) For the following reasons, the Court grants Walmart's motion.

I.    **BACKGROUND**

Mr. Patterson alleges that as he left a Lancaster-area Walmart, he slipped on produce and fell. (Compl. ¶¶ 8–10.) As a result of Walmart's negligence, he claims, he suffered various spinal injuries, among others. (*Id.* ¶¶ 16–17.) Mr. Patterson later argued, after conducting discovery, that the evidence supported his pursuit of punitive damages as well. He rests on the following points in particular: In his view of the surveillance camera footage, the produce remained on the floor for an hour before Mr. Patterson slipped on it (*see* Pl.'s Resp. in Opp. Ex. A, ECF No. 41-4);

during that time, over 10 Walmart employees walked past the produce without addressing it (*see id.*); a cashier, Nichole Crowder, testified that she saw the produce some time before Mr. Patterson slipped, but she did not testify to taking any steps to address the potential hazard (*see id.* Ex. B ("Crowder Dep.") at 12:18–19, ECF No. 41-5); Walmart's corporate representative, Randall Mummert, testified that although certain employees were responsible for monitoring and cleaning the floors, he was not aware of policies and procedures on that matter (*see id.* Ex. F ("Mummert Dep.") at 24:16–19, ECF No. 41-9); and despite Mr. Mummert's testimony, counsel for Mr. Patterson had received such policies and procedures through discovery in another case. Finally, Mr. Patterson also cites the expert report of Jeffrey Wojtkowiak, in which Mr. Wojtkowiak concluded that deficient safety culture, training, and organizational structure contributed to Mr. Patterson's injury. (*See id.* Ex. G at 3–4, ECF No. 41-10.) Mr. Patterson notes that, in fact, this particular Lancaster Walmart "had the second highest amount of slip and fall incidents in the region." (Pl.'s Resp. in Opp. at 4, ECF No. 41-2.)

Walmart argues that quotes from these depositions have been taken out of context. Although Ms. Crowder testified that she noticed the produce before Mr. Patterson fell and believed others had already stepped on it because it was dirty, she also testified that she was not sure for how long the produce was on the floor and had not seen firsthand whether other customers had stepped on it. (Crowder Dep. at 12:18–19, 13:5–11.) Walmart also notes that the initial position of the produce appears to change before Mr. Patterson slips on it; by that time, it has either moved or arguably disappeared. (*Compare* Pl's. Resp. in Opp. Ex. A at 1:23:40, with *id.* at 1:23:48, and with *id.* at 1:29:45.) Further, Walmart points to other aspects of Mr. Mummert's deposition, in which he testified that Walmart "teach[es] associates if you see something, you know, clean it, take care of it right there on the spot," and "[i]f it's too large of a spill that needs more attention to it[,] . . . obviously partner with the maintenance team to help get it cleaned up for us." (Mummert

Dep. at 24:11–15.) He also testified that "[t]he safety maintenance teams are required to obviously walk the stores, see if there is [*sic*] any general issues," though he asserted that there is no policy requiring them to do so at regular intervals. (*Id.* at 33:14–24.) Walmart, however, points to two other witnesses who indicated that, indeed, Walmart employees perform a safety sweep "every hour or two hours." (Defs.' Mot. for Partial Summ. J. Ex. C at 21:18–21, ECF No. 39-3; *see also id.* Ex. D at 39:14–20 (explaining that maintenance teams "do the rounds . . . [m]aybe like every hour"), ECF No. 39-4.) Walmart also subsequently provided internal data to challenge the assertion that this location experienced significantly more falls than its peers. (Defs.' Reply in Support at 2, ECF No. 43.)

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over the claim in this matter pursuant to 28 U.S.C. § 1332(a)(1), as the parties are diverse in citizenship, and Mr. Patterson seeks damages in excess of $75,000. (Am. Compl. ¶¶ 1–4, 22.) Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. Patterson's claim occurred in a Walmart store in Lancaster, Pennsylvania. (*Id.* ¶¶ 8–9.)

Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

## III.   ANALYSIS

The Pennsylvania Supreme Court has explained that "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005) (citing *Martin v. Johns-Manville Corp.*, 494 A.2d 1088, 1097–98 (1985), *abrogated on other grounds by Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800 (Pa. 1989)). That court further explained that because "punitive damages are penal in nature," a defendant's conscious disregard for risk must be "so outrageous as to demonstrate willful, wanton or reckless conduct." *Id.* at 770 (gathering authorities). Conversely, "a showing of ordinary negligence"— or, in fact, even *gross* negligence—"is not enough to warrant punitive damages." *Id.* at 772; *see also SHV Coal, Inc. v. Cont'l Grain Co.*, 587 A.2d 702, 705 (Pa. 1991) (punitive damages "are not justified where the defendant's mental state rises to no more than gross negligence.").

In another case involving Walmart's failure to comply with its practice of relocating difficult-to-reach products on higher shelves to more easily accessible locations on lower shelves, the court explained that the plaintiff had demonstrated, at most, a negligent lapse in good-safety practice. *Martin v. Wal-Mart Stores E., L.P.*, 2018 WL 4489659, at *7 (E.D. Pa. Sept. 18, 2018) ("We are unconvinced that a lapse in good-safety practice, absent other evidence tending to show

'outrageous[ness]' or 'reckless[ness],' will support a claim for punitive damages."). Likewise, in a case in which a Walmart employee directed a plaintiff to an area of the store that, unknown to the employee, had a puddle, the court dismissed the plaintiffs' punitive damages claim, because they had "not pleaded that Walmart knew of the puddle when [one of the plaintiffs] was directed by the customer service desk to the area, and ha[d] not given any indication of how far in advance of her fall that Walmart discovered the existence of the puddle." *Rodman v. Walmart Stores, Inc.*, 2014 WL 6885994, at *1 (E.D. Pa. Dec. 8, 2014).

In Mr. Patterson's view, these cases are distinguished by the fact that Walmart employees knew of the produce and the hazard it posed but took no action to remedy it. A comprehensive view of the evidence presented to this Court belies that such inaction was willful, wanton or reckless conduct, however. First, Ms. Crowder testified that although she saw the produce on the floor, she was not aware for how long it had been there. Combined with the facts that Ms. Crowder was assigned to the cash register and that maintenance teams periodically scan the store for such issues, her inaction does not suggest a willful, wanton or reckless disregard for customer safety.

Second, although Mr. Patterson argues that numerous employees walked past the produce, he also notes that some walked directly on it (Pl.'s Resp. in Opp. at 3)—and presumably an employee would not step on a hazard that they had seen. Indeed, there is no evidence in the record that any of these employees noticed the produce. This fact aligns with the ambiguous nature of the video footage as well: a dark object appears on the floor next to a blue mat where Mr. Patterson ultimately slipped (*see id.* Ex. A at 1:23:40); the object then seems to stick to the bottom of a passing customer's shoe and no longer appears for a time (*see id.* at 1:23:48); a dark object—potentially not the same one as before—appears around the same location after another customer passes by a few minutes later (*see id.* at 1:29:45); and Mr. Patterson eventually slips about 30

minutes later (*see id.* at 2:03:38).  Given the changing situation around the site of the slip-and-fall, the Court cannot say that employees disregarded a risk in a willful, wanton or reckless manner.

Third, and finally, Mr. Patterson's broader argument about the recklessness of this particular Walmart, which allegedly experienced a high number of slip-and-fall cases relative to its peers in the region, is likewise unavailing.  As noted, Walmart provided internal data to challenge that assertion. (Defs.' Reply in Support at 2, ECF No. 43.)  And notwithstanding Mr. Mummert's lack of familiarity with official policies and procedures, he clearly understood there to be at least informal safety practices, such as training employees to address issues and having maintenance teams also periodically check for hazards.  Mr. Patterson has not provided a case permitting a punitive damages claim to proceed because a store has experienced slip-and-fall cases in the past and a corporate representative is aware of only informal safety policies, not official ones.  Indeed, cases like *Martin* and *Rodman* require much more direct knowledge of the hazard that led to the plaintiff's injury.

## IV. CONCLUSION

Mr. Patterson has not presented evidence that employees passing the produce even knew it was there; the produce at issue moved around and may not have been the same item that caused Mr. Patterson to slip; Ms. Crowder's conduct falls far short of reckless behavior; and Mr. Patterson's argument about the Lancaster location's track record and internal policies is insufficient.  For these reasons, the Court grants Wal-Mart's motion for partial summary judgment as to Mr. Patterson's claim for punitive damages.  A corresponding order accompanies this memorandum.